**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **FREDIS GEOVANNI MADRID ROMERO,** | : | |
| | : | |
| **Petitioner,** | : | **3:26-cv-3186** |
| | : | **(JUDGE MARIANI)** |
| **v.** | : | |
| | : | |
| **CRAIG LOWE, WARDEN OF PIKE COUNTY CORRECTIONAL FACILITY** | : | |
| | : | |
| **Respondent.** | : | |

## MEMORANDUM OPINION

Before the Court is Petitioner Fredis Geovanni Madrid Romero's ("Petitioner" or "Madrid Romero") counseled verified petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, (Doc. 1), contesting his detention at Pike County Correctional Facility. Respondent Craig Lowe ("Lowe" or "Respondent"), the immediate custodian of Madrid Romero, opposes the petition. (*See generally* Doc. 4). For the reasons that follow, the Court will grant Madrid Romero's petition and order his immediate release.

## I. BACKGROUND

Madrid Romero is a citizen and national of Honduras, (*see* Doc. 4-3 at 3), who has resided continuously in the United States since 2010. (Doc. 1 at 1). Madrid Romero entered the United States without inspection at an unknown time and place. (*See* Doc. 1 at 1; Doc. 4-3 at 3). During the last 16 years, Madrid Romero has established community ties, and he has two U.S. citizen children. (Doc. 1 at 5). Petitioner has no known criminal

convictions, and the only criminal allegation in the record is an October 26, 2023, charge for fare evasion pursuant to 21 NYCRR Part 1050, the disposition of which is unknown. (Doc. 4-3 at 3–4).

On September 23, 2026, the Mount Carmel Police Department (MCPD) encountered Petitioner, during an investigation of an aggravated assault unrelated to Petitioner. (Doc. 4-3 at 3; Doc. 1 at 4). During the encounter, for reasons not apparent from the record, the MCPD requested and examined Petitioner's identification, (Doc. 1 at 4), and MCPD subsequently reported Petitioner to ICE Enforcement and Removal Operations ("ICE ERO"). (Doc. 4-3 at 3). At that point in time, no removal proceedings had been initiated against Madrid Romero and no warrant existed for his arrest. (*See* Doc. 4-3 at 3–4 (noting "NCIC was negative for wants or warrants" and further noting, on September 23, 2026, that Madrid Romero "*will* be served a Notice to Appear I-862." (emphasis added))).

During this encounter, the ICE ERO sub-office issued a warrant for Madrid Romero's arrest and the MCPD detained him. (Doc. 4-3 at 3). Following local processing, custody of Madrid Romero was transferred to ERO officers, who "then transported [Petitioner] to the Williamsport [ICE ERO] Sub-office for further administrative processing and the commencement of removal proceedings." (*Id.*; *see also* Doc. 1 at 4 ("Following his apprehension, DHS placed Petitioner in removal proceedings")). Thus, the undisputed record reflects that after a chance, unrelated encounter with Madrid Romero at his home, ICE issued a warrant for Madrid Romero's arrest, detained him, and initiated his removal

from the United States. That same evening, on September 23, 2026, at 11:15 P.M., an ICE Officer completed a Notice of Custody Determination but offered no documentation therein for the reasons for denying release on bond. (Doc. 4-2 at 2).

On October 28, 2026, Madrid Romero filed the present petition for writ of habeas corpus. (Doc. 1). Petitioner is detained within the Middle District of Pennsylvania and names as Respondent Craig Lowe, Warden of Pike County Correctional Facility. (*Id.*). Petitioner asserts that his detention without an individualized custody determination violates his Fifth Amendment right to due process. (*See, e.g., id.* at 2 ("Petitioner remains detained without a meaningful individualized determination of whether his continued confinement is necessary to ensure his appearance at immigration proceedings or protect the community.")). In the present petition, Petitioner seeks his immediate release, or, in the alternative, a bond hearing. (Doc. 1 at 12). Respondent opposes the petition, claiming that Petitioner ought to be required to exhaust his administrative remedies by requesting a bond hearing before an Immigration Judge, and Respondent further argues that the availability of an administrative process to challenge Petitioner's detention satisfies the requirements of due process. (*See* Doc. 4 at 4–11).

## II. STANDARD OF REVIEW

Absent suspension, the Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Pursuant to 28 U.S.C. § 2241, a

federal district court may grant a habeas petition where a petitioner's immigration detention is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Claims brought by immigration detainees seeking relief from their confinement "fall within the core of the writ of habeas corpus." *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025). It is well established that a federal habeas corpus petitioner generally has the burden of proving facts entitling him to a discharge from custody. *Goins v. Brierley*, 464 F.2d 947, 949 (3d Cir. 1972) (citations omitted).

## III. ANALYSIS

Petitioner alleges that his detention under 8 U.S.C. § 1226(a) violates his procedural due process rights guaranteed by the Fifth Amendment's Due Process Clause and seeks his immediate release from custody. (*See generally* Doc. 1). Specifically, he alleges Respondents deprived him of his liberty without adequate procedural protections that the Due Process Clause requires when they detained him "without a meaningful individualized determination of whether his continued confinement is necessary to ensure his appearance at immigration proceedings or protect the community."[1] (*Id.* at ¶ 5). Respondents

---

[1] As Petitioner correctly notes, (Doc. 1 at ¶ 6), the Court has jurisdiction to consider the petition. The Court incorporates by reference its prior jurisdictional analyses set forth in similar habeas petitions filed by civil immigration detainees. *See Patel v. O'Neil*, 2025 WL 3516865, at *3 (M.D. Pa. Dec. 8, 2025); *see also Richeme v. Warden*, 2026 WL 937546, at *2-3 (M.D. Pa. Apr. 7, 2026).

principally argue in opposition that Petitioner failed to exhaust his administrative remedies when he did not seek a custody redetermination before an Immigration Judge ("IJ") before coming to this Court. (Doc. 4 at 4–11). Respondents also argue that "Petitioner's detention does not violate the Fifth Amendment's Due Process Clause." (*Id.* at 4).

### A. Exhaustion of Administrative Remedies

Respondents argue in opposition that Petitioner failed to exhaust his administrative remedies by declining to seek a custody redetermination before an IJ upon receiving his Notice of Custody Determination. (*See* Doc. 4 at 6–11). However, § 2241 contains no explicit exhaustion requirement, making exhaustion under the statute prudential, not jurisdictional, and therefore "the Court may excuse exhaustion where administrative remedies would be futile." *A.J.P.S. v. Benzel*, 2026 WL 3131270, at *3 (D.N.J. Oct. 19, 2026) (citing *Lyons v. U.S. Marshals*, 840 F.2d 202, 205 (3d Cir. 1988)). The Court may also excuse exhaustion "'if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable injury.'" *Espinoza Huerta v. Mullin*, 2026 WL 3217165, at *2 (E.D. Pa. Oct. 27, 2026) (citation omitted).

Here, Petitioner raises constitutional claims in his petition and neither the IJ nor the BIA have the authority to hear and adjudicate constitutional claims. *See Basboga*, 2026 WL 3033623, at *3 (requiring exhaustion of due process claim would be futile because neither an IJ nor the BIA "have authority to adjudicate" constitutional claims). Moreover, the Court

finds that Petitioner need not exhaust his administrative remedies by first seeking a custody redetermination before an IJ because doing so under the circumstances would be futile when the "actions of the agency clearly and unambiguously violate statutory or constitutional rights." *Espinoza Huerta*, 2026 WL 3217165, at *2; *see also Ramirez-Ruiz*, 2026 WL 3373189, at *3, n.3 (collecting cases where exhaustion requirement was waived because ICE failed to conduct individualized custody determination in the first instance).

## B. <u>Section 1226(a) and Procedural Due Process</u>

Having found that exhaustion of administrative remedies would be futile under the circumstances, the Court proceeds to evaluate Petitioner's Fifth Amendment due process claim. The parties agree that Petitioner is being detained pursuant to 8 U.S.C. § 1226(a).[2] (Doc. 4 at 4; Doc. 5 at 1). The purpose of § 1226(a) is to provide the Attorney General with discretion to detain certain non-citizens who are not subject to a final order of removal to ensure the appearance of those non-citizens at immigration proceedings. *Buele Morocho v. Warden Philadelphia FDC*, 189 F.4th 287, 300 at n.22 (3d Cir. 2026) (noting, in describing

---

[2] Section 1226(a) provides:

**(a) Arrest, detention, and release**

On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—

- (1) may continue to detain the arrested alien; and
- (2) may release the alien on—
  - (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
  - (B) conditional parole; but
- (3) [omitted]

8 U.S.C. § 1226(a).

"the statutory framework," that "[g]iving those individuals a chance to seek bond makes sense because they may have community ties that make it more likely they will appear for future proceedings"). As this Court thoroughly analyzed in *Ramirez-Ruiz v. Lowe*, § 1226(a) and its implementing regulations, *see* 8 C.F.R. § 236.1(c)(8), create a "two-step framework" to determine whether a non-citizen awaiting removal proceedings should be detained or released on bond. 2026 WL 3373189 at *4–5 (M.D. Pa. Nov. 6, 2026). "In the first step of the process, 'DHS enforcement officials, including ICE agents, make an initial custody determination.'" *Id.* at *4 (citing *A.J.P.S.*, 2026 WL 3131270, at *3). Then, if the enforcement official denies release on bond, "the second step provides that a noncitizen 'may seek redetermination by an Immigration Judge[.]'" *Id.* at *4, n.4 (citing *A.J.P.S.*, 2026 WL 3131270, at *3 (citing 8 C.F.R. § 236.1(d)(1))).[3]

The mere existence of this two-step custody determination process does not, as Respondent contends, conclude the Court's inquiry. "The plain language of the regulation (the first step in the two-step framework), leaves no doubt that ICE must make a meaningful individualized custody determination in the first instance." *Id.* at *5 (citations modified). "Indeed, federal district courts within the Third Circuit 'have concluded that the Government is required to make an 'individualized custody determination' when it arrests a noncitizen, taking into consideration whether the noncitizens poses a danger to the community and

---

[3] A detainee may further appeal the IJ's bond decision to the BIA and may also seek bond redetermination "upon a showing that the alien's circumstances have changed materially since the prior bond redetermination." 8 C.F.R. §§ 1003.19(e), (f), 1003.38.

whether the noncitizen is a flight risk.'" *Id.* at *5 (citing *Saint Cloud v. Jamison*, 2026 WL 3123166, at *4 (E.D. Pa. Oct. 19, 2026) (collecting cases)); *see also A.J.P.S.*, 2026 WL 3131270, at *4 ("Although § 1226(a) affords ICE discretion to detain or release a noncitizen, that discretion necessarily contemplates an individualized exercise of judgment rather than a categorical policy of detention without regard to the noncitizen's particular circumstances.").

This Court further determined, in accordance with courts throughout the Third Circuit and the country, that, beyond the plain text of § 1226(a) and its implementing regulations, the Fifth Amendment's Due Process Clause requires the Government to make an individualized custody determination in the first instance. *See Ramirez-Ruiz,* 2026 WL 3373189, at *5–6, n.6 (collecting cases and applying test articulated by *Mathews v. Eldridge*, 424 U.S. 319, 325 (1976)). *Mathews* requires the Court to weigh three factors to determine what process was due under the circumstances: (1) the "private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement[s] would entail." 424 U.S. at 335.

At the first step of the *Mathews* test, and as this Court concluded in *Ramirez-Ruiz*, Petitioner has a weighty and significant protected liberty interest in being free from physical

confinement. 2026 WL 3373189, at *7; *see also Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004).

Second, the lack of an initial individualized custody determination here poses a significantly high risk of erroneously depriving Petitioner of his liberty. *See Hernandez Ojeda*, 2026 WL 3074934, at *3 (E.D. Pa. Oct. 14, 2026) (concluding that "the risk of erroneous deprivation is high when ICE detains a person without identifying why *that* person presents a danger of flight risk"). Here, Petitioner "received no notice or process prior to detention[.]" *Matos-Ramirez*, 2026 WL 3085462, at *3 (E.D. Pa. Oct. 15, 2026). While Respondents argue that the completion of the DHS Form I-286 (Notice of Custody Determination) is sufficient for the Court to conclude that DHS officials made an individualized custody determination and made the discretionary decision to detain Petitioner, nothing contained on Petitioner's custody determination form supports that conclusion. (Doc. 4-2 at 2). Indeed, nothing in the record allows this Court to reasonably infer that Petitioner received an individualized custody determination, and Courts within the Third Circuit have rejected Respondents' arguments that the Form I-286 is sufficient in itself to show that ICE made an individualized custody determination as to dangerousness or flight risk. *See Ramirez-Ruiz*, 2026 WL 3373189, at *7, n.8 (collecting cases); *see also Basboga*, 2026 WL 3033623, at *6 ("Due Process, however, demands some individual determination and that ICE be able to show its work."). In this matter, Respondents fail to "identify *any* evidence whatsoever demonstrating that ICE actually considered Petitioner's

individual circumstances before deciding to detain to him." *A.J.P.S.*, 2026 WL 3131270, at *6. And the "mere existence of a custody determination form, without more, does not establish that ICE meaningfully exercised its discretion." *Id.* Accordingly, the Court concludes that the risk of erroneous deprivation of liberty cuts strongly in favor of Petitioner where, as here, DHS failed to make any meaningful individualized custody determination in the first instance. *See Saint Cloud*, 2026 WL 3123166, at *5.

At the third step in the *Mathews* balancing test, the Court notes the Government has an interest in enforcing immigration law and in detaining noncitizens pending removal to ensure their appearance "at future immigration proceedings" and "preventing danger to the community." *Zadvydas*, 533 U.S. at 690; *see also Hernandez Ojeda*, 2026 WL 3074934, at *3 ("the Government has an interest in enforcing immigration law."). However, "requiring ICE to meaningfully assess whether a particular noncitizen presents a danger or flight risk imposes little additional burden because ICE is already responsible for making an initial custody determination under the regulatory framework." *A.J.P.S.*, 2026 WL 3131270, at *6; *see also Hernandez Ojeda*, 2026 WL 3074934, at *2 ("requiring ICE to [abide by applicable statutes and regulations] is not a burden on the Government"). Moreover, Respondents fail to identify any facts "suggesting that Petitioner's detention was necessary to advance either interest[.]" *A.J.P.S.*, 2026 WL 3131270, at *6. And Respondents' own documentation reveals that Petitioner has no criminal record, and they do not claim that Petitioner presents a danger the community or poses a flight risk if released. (Docs. 4, 4-3).

Balancing the *Mathews* factors, the Court concludes they weigh decisively in Petitioner's favor. Considering the significant deprivation of physical liberty, "the risk of erroneous detention absent individualized consideration, and the limited additional burden of requiring ICE to exercise the discretion already conferred upon it," these factors taken together establish that "Petiitioner's detention, absent a meaningfully individualized custody determination, violated his procedural due process rights." *A.J.P.S.*, 2026 WL 3131270, at *6. Accordingly, the Court will grant the petition because ICE's failure to make any individualized custody determination before depriving Petitioner of his physical liberty does not comply with the procedural protections that § 1226(a), its implementing regulations, and the Fifth Amendment's Due Process Clause require.

## IV. CONCLUSION

For the foregoing reasons, Petitioner's habeas petition will be granted and the Court will order his release. A separate order follows.

Robert D. Mariani
United States District Judge